# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: January 26, 2021

| | | |
|---|---|---|
| VICKI SCHUMACHER, | * | UNPUBLISHED |
| Petitioner, | * | No. 18-1031V |
| v. | * | Special Master Gowen |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | Attorneys' Fees and Costs; Dismissal. |
| Respondent. | * | |

*Michael A. Galasso,* Robbins, Kelly, Patterson & Tucker, LPA, Cincinnati, OH, for petitioner.
*Ryan D. Pyles,* U.S. Department of Justice, Washington, D.C., for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On August 26, 2020, Vicki Schumacher ("petitioner") filed a motion for attorneys' fees and costs. Petitioner's Motion for Attorneys' Fees ("Fees App.") (ECF No. 39). For the reasons discussed below, petitioner's motion is **granted and award $47,973.83 in attorneys' fees and costs.**

### I. Procedural History

On July 16, 2018, petitioner filed a petition pursuant to the National Vaccine Injury Compensation Program.[2] Petition (ECF No. 1). Petitioner alleged that as a result of receiving the influenza vaccination on October 11, 2016 she suffered Guillain-Barre Syndrome ("GBS"). Petition at Preamble.

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), because this opinion contains a reasoned explanation for the action in this case, I am required to post it on the website of the United States Court of Federal Claims. The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. **This means the opinion will be available to anyone with access to the Internet.** Before the opinion is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). An objecting party must provide the court with a proposed redacted version of the opinion. *Id.* **If neither party files a motion for redaction within 14 days, the opinion will be posted on the court's website without any changes.** *Id.*

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 *et seq.* (hereinafter "Vaccine Act" or "the Act"). Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

An initial status conference was held on August 6, 2018. During this status conference, petitioner was directed to file additional medical records, a motion to amend the case caption and an updated statement of completion. Scheduling Order (ECF No. 9). Petitioner complied with the order and filed updated records on August 27, 2018. ECF No. 11. Petitioner also filed a motion to amend the case caption on October 4, 2018, which was granted the same day. *See* ECF Nos. 15-16.

On April 8, 2019, the respondent filed a status report requesting additional records regarding the administration of the flu vaccine on October 11, 2016 and updated medical records. Status Report (ECF No. 24). Respondent filed another status report on May 9, 2019 stating, "On the current record, respondent declines to entertain settlement negotiations and respectfully requests until June 3, 2019, to file his Rule 4(c) report." Status Report (ECF No. 27).

On July 3, 2019, petitioner filed an expert report from Dr. Arthur Hughes. Petitioner Exhibit ("Pet. Ex.") 11 (ECF No. 31). Dr. Hughes explained that the records demonstrate that sometime after petitioner received the flu vaccine in October 2016, she developed symptoms compatible with GBS in early January 2017. Pet. Ex. 11 at 6. He opined, "…there is a causal relationship to a reasonable degree of medical probability," that petitioner's symptomatology was associated with the flu vaccination she received on October 11, 2016. *Id.* at 6.

A status conference was held on July 23, 2019, where petitioner was requested to file a supplemental expert report, addressing the onset of petitioner's symptoms. Scheduling Order (ECF No. 32). Petitioner filed three motions for extensions of time to file a supplemental expert report. *See* Pet. Motion for Extension of Time, Sept. 19, 2019 (ECF No. 33); Pet. Motion for Extension of Time, Nov. 19, 2019 (ECF No. 34); and Pet. Motion for Extension of Time, Jan. 21, 2020 (ECF No. 35).

On March 23, 2020, petitioner filed another motion for extension of time for filing a supplemental expert report, requesting that the court vacate the deadline for filing an expert report and indicating that counsel for petitioner intends to seek leave of the Court to withdraw as counsel for petitioner. Pet. Mot. (ECF No. 36).

I held another status conference on July 16, 2020, where petitioner's counsel stated that he had attempted to secure another expert in the case, who declined to offer an opinion. Additionally, petitioner's counsel stated that he had explained the issues in the case to petitioner and told her that he intended to withdraw as counsel. Petitioner's counsel also stated that he had since lost contact with petitioner. As such, I entered an Order to Show Cause, providing petitioner an additional thirty days to file additional evidence in support of her claim or the petition would be dismissed. Order to Show Cause (ECF No. 38). The Order to Show Cause was also mailed to the petitioner's last known address by certified mail. *Id.*

As petitioner's counsel made clear that he intended to withdraw as counsel during the status conference on July 16, 2020, he moved for interim attorneys' fees and costs. Fees App. (ECF No. 39). Petitioner requests $43,975.75 in attorneys' fees and $6,196.86 in attorneys' costs. *Id.*

On September 9, 2020, respondent filed a response to petitioner's motion for attorneys' fees and costs. Respondent's ("Resp.") Response (ECF No. 40). Respondent stated that, "If the Special Master is satisfied that this case was filed and proceeded with a reasonable basis, and the Special Master further decides to exercise his discretion to award fees and costs in this uncompensated case, then…that determination of the amount of reasonable attorneys' fees is within the special master's discretion." Resp. Response at 3 (citing *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993). Additionally, "[S]pecial masters are thus accorded 'wide discretion in determining the reasonableness' of a petitioners' request for reasonable attorneys' fees and costs." *Id.* Respondent also stated, "Should the Special Master be satisfied that the reasonable basis and interim fee award standards are met in this case, respondent respectfully recommends that the Special Master exercise his discretion and determine a reasonable award for attorneys' fees and costs. *Id.* at 4.

Petitioner filed a reply to respondent's response on September 15, 2020. Pet. Reply (ECF No. 42). Petitioner stated that, "At all points in this case there was a reasonable basis to bring the claim until Dr. Gershwin indicated that he could not provide an opinion supporting causation." Pet. Reply at 77. Additionally, petitioner stated that, "Objectively, [her] treating physician provided an opinion of causation both before and after the petition was filed and this opinion was based upon the review of her medical records." *Id.* at 6. Further, "it is important to note that there is no medical evidence that [petitioner's] injury was caused by anything other than the vaccine." *Id.* at 6. Petitioner requested that the Court determine that reasonable basis existed for asserting the claims in the petition and award reasonable attorneys' fees and costs incurred in connection with the petition. *Id.* at 8.

On September 10, 2020, I entered a decision dismissing the petition. Decision (ECF No. 41). On October 14, 2020, judgment was entered dismissing the case for failure to prosecute and insufficient proof. Judgment (ECF No. 44).

Since this case was since dismissed after petitioner filed the interim motion for attorneys' fees and costs, this application is considered a final attorneys' fees and costs application and the matter is now ripe for adjudication.

## II. Legal Standard

The Vaccine Act provides that reasonable attorney's fees and costs "shall be awarded" for a petition that results in compensation. § 15(e)(1)(A)-(B). Even when compensation is not awarded, reasonable attorneys' fees and costs "may" be awarded "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for which the claim was brought." § 15(e)(1). The Federal Circuit has reasoned that in formulating this standard, Congress intended "to ensure that vaccine injury claimants have readily available a competent bar to prosecute their claims." *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012).

"Good faith" and "reasonable basis" are two distinct requirements. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (citing *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 289 (2014)). "Good faith" is a subjective test, satisfied

through subjective evidence. *Cottingham v. Sec'y of Health & Human Servs.,* 971 F.3d 1337 (2020). The "good faith" requirement is satisfied if a petitioner genuinely believes that he or she suffered a compensable vaccine-related injury. *See Riley v. Sec'y of Health & Human Servs.,* No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011); *Turner v. Sec'y of Health & Human Servs.,* No. 99-554, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).

Reasonable basis, on the other hand is an objective test, satisfied through objective evidence. *Cottingham,* 971 F. 3d at 1344 (citing *Simmons,* 875 F.3d at 635). This evaluation may include various objective factors such as "the factual basis of the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289-90 (2018). However, a Special Master may not consider subjective evidence, such as attorney conduct and a looming statute of limitations in a reasonable basis analysis. *Cottingham* at 1345. "[I]n deciding reasonable basis the Special Master needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Medical records can support causation even where the records provide only circumstantial evidence of causation. *Harding v. Sec'y of Health & Human Servs.,* 146 Fed. Cl. 381, 403 (Fed. Cl. 2019). A petitioner must furnish some evidence in support of the claim. *Bekiaris v. Sec'y of Health & Human Servs.*, 140 Fed. Cl. 108, 115 (2018) (reasoning that the petitioner must "adduce medical evidence going to causation beyond temporal proximity"). The burden of proof to establish reasonable basis for attorney fees, however, is lower than the preponderant evidence standard required to prove entitlement to compensation. *Cottingham* at 1346 (citing *Chuisano,* 116 F. Cl. at 287). More than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis. *Id.*

Reasonable basis may exist at the time a claim is filed but dissipate as the case progresses. *R.K. v. Sec'y of Health & Human Servs.*, 760 Fed. Appx. 1010, 1012 (Fed. Cir. March 15, 2019) (citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1376-77 (Fed. Cir. 1994) for the holding that "an award of fees and costs was not authorized for work performed on a case after a claim lost its reasonable basis"). "Petitioners' counsel have an obligation to voluntarily dismiss a Vaccine Act claim once counsel knows or should know a claim cannot be proven." *Cottingham v. Sec'y of Health & Human Servs.*, 134 Fed. Cl. 567, 574 (2017) (citing *Perreira*, 33 F.3d at 1376; *Curran v. Sec'y of Health & Human Servs.*, 130 Fed. Cl. 1, 6 (2017); *Allicock v. Sec'y of Health & Human Servs.*, 128 Fed. Cl. 724, 727 (2016)).

Petitioners "bea[r] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 484 (1993). Adequate proof of the claimed fees and costs should be presented when the motion is filed. *Id.* at 484 n.1. The special master has the discretion to reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313 (Fed. Cl. 2008), *aff'd* No. 99-537V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008). Special masters may look to their experience and judgment to reduce the number of hours billed to a level they find reasonable for the work performed. *Saxton v. Sec'y of*

*Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993).  A line-by-line evaluation of the billing records is not required.  *Wasson*, 24 Cl. Ct., *aff'd in relevant part*, 988 F.2d 131 (Fed Cir. 1993) (per curiam).

### III. Analysis

#### a. Good Faith and Reasonable Basis

Petitioner asserted that she suffered GBS after receiving the flu vaccine.  Petitioner's injury is a common injury in this program which is often compensated.  Additionally, GBS is a table injury associated with the influenza vaccination, although the petitioner's injury onset was not within the appropriate time range of the Table.  Petitioner was also diagnosed with GBS while in the hospital after she was found to have an elevated spinal fluid protein of 163 and her EMG was abnormal.  Pet. Ex. 6 at 66.  Later, petitioner had an EMG that showed "severe predominantly motor demyelinating polyneuropathy affecting both [petitioner's] lower limbs," and she was diagnosed with acute inflammatory demyelinating polyradiculoneuropathy ("AIDP").  Pet. Ex. 8 at 11.

Petitioner also filed an expert report to support her claim.  Pet. Ex. 11.  In Dr. Hughes report, he opined that petitioner's GBS was caused by the flu vaccination she received on October 11, 2016, but noted that medical studies suggest an increased risk of developing GBS generally within four to six weeks following the flu vaccination.  Pet. Ex. 11 at 6.  The four-to-six-week time frame for developing GBS post-flu vaccination that Dr. Hughes cited did not coincide with the petitioner's course of disease, where her initial symptoms developed almost twelve weeks post-vaccination.

During the status conference held on July 23, 2019, I indicated that the onset of petitioner's symptoms and prolonged progression of her symptoms was the main obstacle petitioner needed to overcome and recommended that she find another expert to evaluate her medical records.  Scheduling Order (ECF No. 32).

Following instructions from the Court, petitioner sought the expert opinion of Dr. Eric Gershwin.  However, Dr. Gershwin declined to provide a favorable opinion supporting vaccine causation in this case.  As such, petitioner's counsel advised petitioner of the difficulty of prevailing on their vaccine claim.  Petitioner's counsel sought to withdraw from representation and attempted to contact the petitioner multiple times, but petitioner was unresponsive to her attorney.

I do not doubt petitioner's good faith for bringing this claim.  In her affidavit, she stated, "It is my belief that the injuries I have sustained including the diagnosis of GBS were caused by the trivalent influenza vaccination that I received on October 11, 2016." Pet. Ex. 3 at ¶ 12.  Petitioner had a subjective belief that the flu vaccine was the cause of her injury.  Further, respondent opted not to object to petitioner's good faith for bringing the claim.  Finally, petitioner attempted to secure another expert report to demonstrate causation, demonstrating her belief that the vaccine caused her injury.

Although the case was ultimately dismissed, the objective evidence demonstrated that petitioner met reasonable basis requirements. Petitioner filed proof of vaccination; medical records with a clear diagnosis of GBS, which is a recognized injury after receipt of a flu vaccination; and she filed an expert report in support of her claim, even if the report was not sufficient to establish vaccine causation. I find that there was a reasonable basis to pursue this claim.

### b. Hourly Rate

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Avera,* 515 F. 3d at 1348. In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriquez v. Sec'y of Health & Human Servs.,* 632 F.3dd 1381, 1384 (Fed. Cir. 2011) (citing *Avera,* 515 F. 3d at 1349).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorney's experience. *McCulloch v. Sec'y of Health & Human Servs.,* No. 09-293V, 2015 WL 56343323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has adopted the framework set forth in *McCulloch* and has promulgated updated rates for subsequent years.

Petitioner requests that Mr. James Kelly be compensated at a rate of $425.00 per hour for work performed between 2017 through 2020 and Mr. Galasso be compensated at a rate of $350.00 per hour for work performed in 2017 and 2018 and $365.00 per hour for work performed in 2019 and 2020. Fees App. at 3. Mr. Kelly's rate is consistent with the OSM Fee Schedule and he has been awarded this rate in other cases. *See Goldie v. Sec'y of Health & Human Servs.,* No. 18-1476V, 2019 WL 77496619 (Fed. Cl. Spec. Mstr. Dec. 6, 2019). Mr. Galasso's requested rate is consistent with the OSM Fee Schedule for an attorney with similar years of experience practicing law. Based on the above, I find the requested rates for Mr. Kelly and Mr. Galasso to be reasonable.

Petitioner also requested that one paralegal who worked on the case be compensated at an hourly rate of $145.00 per hour for work performed from 2017 through 2020. Fees App. at 3. This rate is also consistent with the OSM Fee Schedule and therefore, I find this requested rate reasonable.

### c. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra-office communications, attorneys billing excessive hours, [and] attorneys

6

entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-765V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No. 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016) (collecting cases). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in his experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728-29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

Petitioner's fee application requests compensation for a total of 229.4 hours of work performed on her case between 2017 and 2020. In petitioner's fee application, she states, "Petitioner considers it appropriate to discount the legal services attorney/paralegal fees of $50,258.00 by 12.5% to account for any unintended duplication of effort. Fees App. at 4. Petitioner also states that, "there have been legal services provided after April 2020 for which petitioner has not sought fees." *Id.*

While petitioner discounting fees by 12.5% is appreciated to "account for any unintended duplication of effort," there are several hours billed for research of the Vaccine program General research conducted for the purpose of familiarizing oneself with filing procedures and Vaccine Program rules, and the general nature of the Vaccine Program are not recoverable tasks under the Vaccine Act. *See Helton v. Sec'y of Health & Human Servs.,* No. 16-0234V, 2017 WL 4020452, at *5 (Fed. Cl. Spec. Mstr. Aug. 28, 2017) (holding it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program); *Carter v. Sec'y of Health & Human Servs.,* No. 04-1500V, 2007 WL 2241877, at *5 (Fed. Cl. Spec. Mstr. July 13, 2017) (finding that [a]n inexperienced attorney may not ethically bill his client to learn about an area of law in which he is unfamiliar. If an attorney may not bill his client for this task, the attorney may also not bill the Program for this task."); *see also Hammitt v. Sec'y of Health & Human Servs.,* No. 07-170V, 2011 WL 1827221, at *5 (Fed. Cl. Spec. Mstr. Apr. 7, 2011).

Petitioner first made contact about a potential vaccine claim in March 2017. Fees App. Attachment ("Attch.") 1 at 1. Counsel began work on petitioner's claim, but also engaged in researching requirements about the Vaccine program and at least nine separate times billed for research on the Vaccine Injury Compensation Program. For example, on May 10, 2017, counsel billed time for "research of VICP funds requirements." Fees App. Attch. 1 at 1. On August 21, 2017, counsel billed for "review[ing] federal court claims of guidelines for practice, review vaccine rules appendix," totaling one hour. *Id.* at 4. On August 22, 2017, counsel also billed for "research legal standards for causation in vaccine claim cases. *Id.* at 4. On September 11, 2017, counsel billed 1.7 hours for "research recovery of fees and costs, timing of expenses and

7

separation of client incurred expenses." Later, counsel billed time to "review guidelines for practice under [National Vaccine Injury Compensation Program]," totaling 1.7 hours. *Id.* at 10. I find the time billed by counsel for basic research on the Vaccine Program unreasonable.

For the foregoing reasons and in an exercise of my discretion, I find that the requested attorneys' fees should be reduced by 5%. Accordingly, I award $41,776.97 in attorneys' fees.

### d. Attorneys' Costs

A request for reimbursement of costs, similar to fees, must be reasonable. *Perreira v. Sec'y of Health & Human Servs.,* 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). In this case, petitioner's counsel request $6,196.86 in attorneys' costs. Fee App. at 4-5. The majority of these costs are associated with fees charged by experts consulted to review petitioner's case. *Id.* Dr. Arthur Hughes, M.D., charged a rate of $350.00 per hour for time spent reviewing petitioner's medical records, examining the petitioner and providing an expert report. *Id.* Petitioner also consulted Dr. Eric Gershwin, M.D., to review her records and provide a report. Ultimately, Dr. Gershwin declined to provide an opinion in support of petitioner's claim, however, compensation for his time to review her medical records is reasonable. The other costs petitioner's counsel incurred, include filing fees, obtaining medical records, and postage. These costs are reasonable. As such, I award the full amount of attorney's costs of **$6,196.86**.

## II. Conclusion

In accordance with the foregoing, petitioner's application for attorneys' fees and costs is **GRANTED.** I award the following reasonable attorneys' fees and costs:

| | |
|---|---|
| Attorneys' Fees Requested: | $43,975.75 |
| *Reductions for Billing Issues:* | -$2,198.78 |
| **Attorneys' Fees Awarded:** | **$41,7776.97** |
| | |
| Attorneys' Costs Requested: | $6,196.86 |
| *No reduction* | |
| **Attorneys' Costs Awarded:** | **$6,196.86** |
| | |
| **Attorneys' Fees and Costs Awarded:** | **$47,973.83** |

Accordingly, I award the following:

1) **A lump sum in the amount of $47,973.83, representing reimbursement for attorneys' fees and costs, in the form of a check payable jointly to petitioner and petitioner's counsel, Mr. Michael A. Galasso of Robbins, Kelly, Patterson & Tucker.[3]**

---

[3] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against at client, "advanced costs," and fees for legal services rendered. Furthermore, Section 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See generally Beck v. Sec'y of Health & Human Servs.,* 924 F.2d 1029 (Fed. Cir. 1991).

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court shall enter judgment in accordance herewith.[4]

**IT IS SO ORDERED.**

**s/Thomas L. Gowen**
Thomas L. Gowen
Special Master

---

[4] Entry of judgment is expedited by each party's filing notice renouncing the right to seek review.  Vaccine Rule 11(a).